UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORENE SMITH,

        Plaintiff,

v.                                Case No:  8:13-cv-2364-T-27AEP

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Lorene Smith ("Plaintiff") seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

**I.**

**A.**    **Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI.  (Tr. 50.)  The Commissioner denied Plaintiff's claims both initially and upon reconsideration.  (Tr. 50.)  Plaintiff then requested an administrative hearing.  (Tr. 50.)  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified.  (Tr. 50.)  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits.  (Tr. 47, 58.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1.)  Plaintiff then timely filed a

complaint with this Court.  (Dkt. No. 1.)  The case is now ripe for review under 42 U.S.C. §

405(g) and 42 U.S.C. § 1383(c)(3).

   **B.     Factual Background and the ALJ's Decision**

   Plaintiff, who was born in 1954, claimed disability beginning April 1, 2010.  (Tr. 12,

50.)  Plaintiff has a 12th grade education with specialized job training/vocational training in

Certified Nurse Assistant/Home Health Aid.  (Tr. 188-89.)  Plaintiff's past relevant work

experience included working as a housekeeper, cashier, and as a Certified Nurse

Assistant/Home Health Aid.  (Tr. 86-87, 189.)  Plaintiff alleged disability due to liver problems.

(Tr. 188.)

   After conducting a hearing and reviewing the evidence of record, the ALJ determined

Plaintiff had the following severe impairments: hepatitis C and diabetes.   (Tr. 53.)

Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 53.)  The ALJ then concluded

that Plaintiff retained a residual functional capacity ("RFC") to perform the full range of light

work, specifically, Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently.

(Tr. 54-58)  Plaintiff can sit/stand/walk (with normal breaks) for a total of about 6 hours in an

8-hour workday.  (Tr. 54-58.)  Plaintiff can frequently climb, balance, stoop, kneel, crouch and

crawl, but should avoid concentrated exposure to hazards, unprotected heights or moving

machinery.   (Tr. 54-58.)   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's

subjective complaints and determined that, although the evidence established the presence of

underlying impairments that reasonably could be expected to produce some of the symptoms

alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her

symptoms were not credible to the extent that they were inconsistent with the RFC. (Tr. 54-58.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as a cashier. (Tr. 58.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 58.)

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and, considering the RFC assessment, whether the claimant can perform his or her past relevant

work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  *Id.*  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam).  Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 1035 (2005) (citation omitted).  The Commissioner must apply the correct law and demonstrate that the Commissioner has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of witnesses.  *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971) (per curiam).[2]  Similarly, it is the responsibility of the Commissioner to

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff challenges the ALJ's decision on two grounds:

(1)    The ALJ did not properly determine whether Plaintiff's anemia, pancytopenia, and cirrhosis were severe impairments.

(2)    The ALJ's RFC determination is not supported by substantial evidence.

For the reasons that follow, neither of these contentions warrant reversal.

#### A. The ALJ Properly Determined that Plaintiff's Anemia, Pancytopenia, and Cirrhosis Were Not Severe Impairments

Plaintiff contends that the ALJ, despite having found Plaintiff's hepatitis C and diabetes to be severe impairments in the step-two analysis, erred by not finding severe impairments in her anemia, pancytopenia, and cirrhosis. This position, however, ignores the ALJ's obligation in conducting the step-two analysis.

Step two operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 Fed. App'x 850, 853 (11th Cir. 2013)

(per curiam).  At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 416.920, 416.921. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984) (per curiam).  It follows that "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities.  *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (per curiam).

Notably, the finding of any severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 Fed. App'x 890, 892 (11th Cir. 2013) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied); *see also Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 824-25 (11th Cir. 2010) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe).  In this sense, step two functionally operates "as a filter; if no severe impairment is

shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison*, 814 F.2d at 588.

Here, because the ALJ determined that Plaintiff suffered from multiple severe impairments at step two (hepatitis C and diabetes), and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless. *See Packer*, 542 Fed. App'x at 892; *Heatly*, 382 Fed. App'x at 824-25 ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires.").

Beyond the requirements of step two, substantial evidence also supports the ALJ's determination that Plaintiff's anemia, pancytopenia, and cirrhosis were not severe impairments because they did not cause any significant functional limitations relating to basic work activities. (Tr. 53). Plaintiff's medical records between 2009 and 2011 note a steady documentation of the conditions at issue, but do not indicate any additional abnormalities and provide no indication that the conditions would affect Plaintiff's ability to work. (Tr. 292, 311-12, 337-39, 439-40). For example, a June 2009 CT of Plaintiff's abdomen found the liver to be homogeneous and not significantly enlarged. (Tr. 350). Various other liver and abdominal scans preformed from 2009-2011 found no evidence of an enlarged or palpable liver or spleen. (Tr. 480, 484, 531, 604, 610). As noted by the ALJ, Plaintiff's hemoglobin blood counts also show signs of improvement in 2011, and, significantly, Plaintiff is documented on numerous occasions as being "fully active" and able to carry on "all pre-disease performance without restriction." (Tr. 575-627). Therefore, despite Plaintiff's testimony that her blood condition

disallowed her to be in public and around people (Tr. 73), that her blood problems lead to low energy levels (Tr. 80), and that she is unable to sleep due to pain in her extremities (Tr. 74), the ALJ's determination that the conditions at issue do not cause any significant functional limitation is supported by substantial evidence.  (Tr. 53); *see Turner*, 182 Fed. App'x at 948-49.

Furthermore, insofar as Plaintiff contends that these conditions combine to cause functionally limiting pain that significantly affects her ability to maintain employment, such a position is unsupported by medical evidence in the record and fatally relies on Plaintiff's credibility— something the ALJ expressly recognized in citing *Landry v. Heckler*, 782 F.2d 1551 (11th Cir. 1986).  (Tr. 53, 55).  Indeed, as discussed more fully below, Plaintiff's credibility in general is brought squarely into question by her application and receipt of unemployment benefits in the State of Florida, a fact highlighted by the ALJ.  (Tr. 52, 53); *see Witherspoon v. Colvin*, No. CA 12-0220-C, 2013 WL 1154319, at *18 n. 13 (S.D. Ala. Mar. 19, 2013); *George v. Astrue*, CV-11-S-3518-M, 2012 WL 3030157, at *1-*5 (N.D. Ala. July 20, 2012); *Boyd v. Astrue*, No. 3:10-cv-105-J-JRK, 2011 WL 1259795, at *6-*7 (M.D. Fla. Mar. 31, 2011); *Willimon v. Astrue*, No. 3:08-cv-1235-J-JRK, 2010 WL 1252152, at *4 (M.D. Fla. Mar. 26, 2010) ("Rather, it appears the ALJ was only pointing out the inconsistency between collecting unemployment benefits while claiming to be as limited as Plaintiff alleges. When it was necessary to report that he was able to work for the purpose of obtaining unemployment benefits, Plaintiff so reported; now that Plaintiff is seeking disability benefits, he is reporting that he is unable to work.  These positions are inconsistent" (internal citation omitted)).

Ultimately, despite evidence of bodily imperfection and physiological abnormalities, the record does not indicate that Plaintiff's anemia, pancytopenia, and cirrhosis support a

finding of "severity" as measured in terms of their effect upon Plaintiff's ability to work for a continuous twelve months period.  *See* 20 C.F.R. §§ 404.1505(a), 416.905(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."); *McCruter*, 791 F.2d at 1547 ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").  Instead, substantial evidence supports the ALJ's determination that Plaintiff's anemia, pancytopenia, and cirrhosis are non-severe.  *See id*. at 1547-48.

### B.  Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff also submits that the ALJ, in determining Plaintiff's RFC, did not perform a proper function-by-function assessment.  Plaintiff's argument lacks merit.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each.  20 C.F.R. §§ 404.1520(e) 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison*, 814 F.2d at 588 ("The ALJ must consider the applicant's medical condition taken as a whole").

Moreover, in assessing physical (and mental) abilities, the Regulations require that the ALJ "*first* assess the nature and extent of [a claimant's] physical limitations and then determine [a claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b), 416.945(b) (emphasis added).  The Social Security Rulings make clear that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.[3]  Only after that may [the] RFC be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy."  S.S.R. 96-8p, 1996 WL 374184, at *1.  Even though Social Security Rulings are only binding on the Social Security Administration and not on the courts, the Court nonetheless finds the instruction telling.  *See* 20 C.F.R. § 402.35 (explaining that the Rulings are binding on all parts of the Social Security Administration because the Rulings represent precedent final opinions and order and statements of policy and interpretations that have been adopted).

Here, the ALJ sufficiently analyzed Plaintiff's physical abilities in his RFC analysis by discussing all of the evidence of record, which supported his finding that Plaintiff could perform a full range of light work.  *See Freeman v. Barnhart*, 220 Fed. Appx. 957, 959-60 (11th Cir. 2007) (per curiam) (finding that the ALJ made an adequate function-by-function analysis before forming the claimant's RFC because after considering all of the evidence, the ALJ determined that the claimant had no functional limitations and the hypothetical posed to the VE was limited to light exertional activity, which implicitly included the limitations in sitting, standing, and

---

[3] The functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945 include physical abilities (sitting, standing, walking, etc.), mental abilities (understanding, remembering, carrying out instructions, etc.) and other abilities (skin impairment, epilepsy, impairment of vision, etc.) that are affected by a claimant's impairments.

walking).  The ALJ's detailed analysis displays a robust consideration of Plaintiff's conditions.

(Tr. 54-58).  Granting great weigh to treating physicians at Tampa Family Health Center and

Shalin Shah, DO, the ALJ considered examinations in the record detailing normal gait/station,[4]

no evidence of peripheral neuropathy, no evidence of significant end-organ dysfunction due to

diabetes, normal appearing lower extremities with no edema or sensory deficits,[5] normal bowel

sounds without distention or tenderness,[6] negative liver and spleen images (no evidence of

enlargement),[7] and continued designations of the Plaintiff as "fully active."[8]  (Tr. 55-57); *see*

*Crawford v. Comm'r of Soc. Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) ("The testimony

of a treating physician must be given substantial or considerable weight unless 'good cause' is

shown to the contrary.").  In addition to discussing Plaintiff's severe impairments, the ALJ also

appropriately considered other impairments and their relationship to Plaintiff's functional

limitations—noting Plaintiff's complications due to pancytopenia and fevers, discussing a lack

of significant problems resulting from Plaintiff's hepatitis C, commenting on Plaintiff's vague

complaints regarding abdominal pain and discomfort, and addressing Plaintiff's improving

---

[4] An August 2011 record signed by Paula D. Zemaitis, P.A., describes Plaintiff's balance, gait, and stance as "[n]ormal."  (Tr. 539).

[5] A 2010 record by Keischa N. Woodhouse, ARNP, notes no edema and no motor or sensory disturbances.  (Tr. 338).  A 2011 report by Tran Phung, MD, describes normal extremities. (Tr. 606).

[6] An August 2011 by Paula D. Zemaitis, P.A., states: "Bowl sounds were normal. . .[n]o abdominal tenderness [and]. . .[no] mass [] palpated in the abdomen."  (Tr. 539).

[7] Reports of images taken in 2009, 2010, and 2011, all consistently indicate normalcy, describing a liver that appears homogenous and not significantly enlarged, with no enhancing masses or dilated bile ducts.  (Tr. 350, 480, 484, 604).

[8] A litany of records by treating physician Shalin Shah, DO, covering a span of several months in 2011, reflect Plaintiff as having a performance status of fully active, and able to carry on pre-disease performance without restriction. (Tr. 575,578, 580, 590, 592, 602).

blood counts.[9]  (Tr. 56); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (per curiam) (noting that the ALJ must consider the combined effects of all impairments in evaluating disability); *McConnell*, 2009 WL 4405477 at *3 (N.D. Fla. Dec. 2, 2009) ("Even if there is error at step 2 . . . a remand is not needed if the error is harmless because the ALJ considered the limiting effects of the impairment at each succeeding step, along with other impairments." (citations omitted)).

Plaintiff leaves it to this Court to speculate as to which "non-exertional limitations" the ALJ failed to consider.  Insofar as Plaintiff is referring to subjective complaints of pain, weakness, and fatigue, however, the ALJ properly evaluated such and the ALJ's determinations are supported by substantial evidence.

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints.  As the Eleventh Circuit Court of Appeals explained in *Landry v. Heckler*, the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain [or symptoms] arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or symptoms]." 782 F.2d at 1553; *see Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam) (noting that the pain standard also applies to complaints of subjective conditions other than pain); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("[T]here must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other

---

[9] Plaintiff's medical records indicate that Plaintiff's anemia and other blood related issues quickly improve under care.  For example, a 2010 Final Report by Shalin Shah, DO, notes improved blood counts after treatment.  (Tr. 426-27).  Moreover, a preliminary report from May 2011 interpreted by Stephen J. Kennedy, MD, described Plaintiff as awake and alert. (Tr. 612).

evidence . . . would lead to a conclusion that you are disabled."). If the ALJ discounts Plaintiff's testimony concerning subjective complaints after finding a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, he must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam)). The reasons given for discrediting pain testimony must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam); *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). In evaluating credibility, the ALJ must consider objective medical evidence and other evidence such as a claimant's daily activities, the location, duration, frequency, and intensity of a claimant's pain or other symptoms, and precipitating and aggravating factors. 20 C.F.R. §§ 404.1529(c), 416.929(c).

In the instant case, the ALJ properly applied the pain standard and found, after considering the evidence of record, that Plaintiff's medically determinable impairments "reasonably could be expected to cause *some* of the alleged symptoms." (Tr. 55.) (emphasis added). Further, the ALJ determined that Plaintiff's statements about the intensity, persistence, or functionally limiting effects (the severity) of pain and other symptoms were not credible because they were not supported by the objective medical evidence and the weight of all of the other evidence. (Tr. 55, 57).

As required by the Eleventh Circuit, the ALJ articulated explicit and adequate reasons for rejecting Plaintiff's pain allegations. (Tr. 54-58). Specifically, the ALJ found Plaintiff's complaints of pain and limitations to be at odds with the litany of non-limiting diagnoses mentioned above and a history of routine and/or conservative treatment. (Tr. 55-57). Moreover, as touched on above, the ALJ also found Plaintiff's credibility to be lacking for several reasons, notably, Plaintiff's receipt of unemployment benefits, her ability to search for

and apply to jobs on the internet,[10] her active lifestyle (e.g. traveling capabilities), her ability to follow a set schedule, communicate with others, and complete tasks, as well as her ability to work immediately prior to the alleged period of disability, despite suffering from approximately the same level of severe impairments.[11]  (Tr. 53, 55, 57).  As such, the ALJ properly analyzed Plaintiff's allegations of pain and the ALJ's conclusion is supported by substantial evidence.[12] *See Dyer*, 395 F.3d at 1210-11.

## IV.

Accordingly, after due consideration and for the foregoing reasons, it is hereby RECOMMENDED:

1.  The decision of the Commissioner be AFFIRMED.

2.  The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

---

[10] Plaintiff testified that she has been looking for work on the internet.  (Tr. 72).

[11] Plaintiff testified that she worked until December 2010 and collected unemployment benefits in 2011.  (Tr. 71).

[12] Plaintiff also avers that the ALJ erred by exclusively relying on the grids in determining Plaintiff's past relevant work.  The ALJ's decision, however, does not rely on the grids, instead determining that Plaintiff was able to perform her past relevant work as a cashier.  (Tr. 58).  Plaintiff's argument in this regard is, therefore, irrelevant.  *See* 20 C.F.R. Pt. 404, Subpart P, App. 2 ("The following rules reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work.").

IT IS SO REPORTED in Tampa, Florida, on this 7th day of January, 2015.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(c); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).

Copies furnished to:
Hon. James D. Whittemore
Counsel of Record